Eastern District of Kentucky
FILED

OCT 0 4 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-570-JBC

VIRGIL R. MASTERS,                                                         PLAINTIFF

V.          **PROPOSED FINDINGS OF FACT
            AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
  Social Security Administration,                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Virgil R. Masters, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision that he was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision, and that based on his application for Disability Insurance Benefits (DIB) filed on February 24, 2003, he was not disabled and was not entitled to disability benefits.

This matter is before the Court on cross-motions for summary judgment. [DE ##5, 8].

By Order of July 8, 2005, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff alleges that he became disabled on September 19, 2002, at age 33, due to back problems. (Tr. 68). His DIB application was denied initially and on reconsideration. Thereafter, plaintiff requested an ALJ hearing. Subsequently, on August 4, 2004, an ALJ hearing was held, and on September 2, 2004, ALJ Gregory O. Varo found that plaintiff was not disabled at any time through the date of the ALJ's decision; therefore, he was not entitled to disability benefits. (Tr. 16-26).

Plaintiff was born on December 1, 1968, has a tenth-grade education, and has past relevant work experience (PRW) as a car lot attendant, laborer, truck driver, and fork-lift operator. (Tr. 16). Summarizing the ALJ's findings, the ALJ found that (1) claimant had not engaged in substantial gainful activity since his alleged onset date; (2) claimant is status-post fusion at L4-5 and L5-S1 and has borderline intellectual functioning and obesity, impairments that are "severe;" however, claimant's medically determinable impairments do not meet or medically equal an impairment listed in Appendix 1, Subpart P, Regulations No. 4; (3) claimant's allegations concerning his limitations are not totally credible; (4) claimant is unable to perform any of his PRW; (5) claimant has no transferable skills from any PRW and/or transferability of skills is not an issue herein; (6) claimant has the residual functional capacity (RFC) to perform a significant range of light work, with certain restrictions; (7) although claimant's exertional restrictions do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.18 and 201.25 as a framework for decision-making, there is a significant number of jobs in the national economy claimant can perform, such as assembler and machine operator; and (8) claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the ALJ's decision. (Tr. 16-26).

On October 26, 2004, the Appeals Council declined to review the ALJ's decision (Tr. 9-11); therefore, the ALJ's decision represents the final decision of the Commissioner, and this matter is ripe for judicial review under § 1631 (c)(3) of the Social Security Act, 42 U.S.C. § 405(g).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, see 42 U.S.C. § 405(g); Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th

Cir. 1990), (quoting <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981, <u>cert. denied</u>, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case <u>de novo</u>, resolve conflicts in evidence, or decide questions of credibility. <u>Garner v. Heckler</u>, 745 F.2d 383 (6th Cir. 1984).

## IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of his motion for summary judgment, plaintiff contends that the ALJ erred (1) when he failed to find that plaintiff's impairments in combination meet or equal Listing 12.05C, (2) by finding that plaintiff has a limited education, rather than finding plaintiff to be illiterate, and (3) by failing to comply with SSR 00-4p (2000), for not asking the Vocational Expert (VE) if the jobs that the VE identified that plaintiff could perform were classified accordingly in the Dictionary of Occupational Titles (DOT), and if not, to resolve any discrepancy between the two. For all of these reasons, plaintiff submits that the ALJ's decision is not supported by substantial evidence, that the Commissioner's decision should be reversed, and that he should be awarded disability benefits. Alternatively, plaintiff requests that this case be remanded for further proceedings.

In response, the defendant asserts that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion/Analysis

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decision, the medical evidence of record, and the transcript of the ALJ hearing.

**1. ALJ's finding that plaintiff's impairments in combination did not meet Listing 12.05C**

Plaintiff argues that the ALJ erred by not finding that plaintiff's impairments in combination met or equaled a Listing impairment, specifically Listing 12.05C. As grounds for this argument, plaintiff notes that he has valid I.Q. test scores of 70 or under (Tr. 234), which were consistent with his I.Q. test scores in school (Tr. 118-19), all of which establish a low intelligence level that was

3

present before age 22, which distinguishes this case from *Foster v. Commonwealth*, 279 F.3d 348, 354-55 (6th Cir. 2002). As to meeting another component of Listing 12.05C, plaintiff asserts that the ALJ impermissibly added this element to Listing 12.05C, as the plain language of this Listing does not include an "adaptive functioning" component. Therefore, the ALJ erred for finding otherwise.

> Listing 12.05 concerns mental retardation and autism and states, in pertinent part, as follows:
>
> 12.05 *Mental Retardation and Autism:* Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptative behavior initially manifested during the developmental period (before age 22). . . . Autism is a pervasive developmental disorder characterized by social and significant communication deficits originating in the developmental period.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitations of function;

20 C.F.R. Ch. III (4-1-95 Edition) Pt. 404, Subpt. P, App. 1, p. 417.

Plaintiff argues that the plain language of Listing 12.05C does not require deficient "adaptive functioning" in order to meet that Listing. However, as seen above, Listing 12.05 clearly states: "Mental retardation refers to a subaverage general intellectual functioning *with deficits in adaptative behavior* initially manifested during the developmental period (before age 22)." (Emphasis added). Thus, contrary to plaintiff's argument, deficient adaptative functioning or behavior is a component of 12.05, with the severity criteria of 12.05 being met by satisfying the requirements of 12.05A, B, C, D, E, or F, and a plaintiff must provide evidence of both low I.Q test scores and deficits in adaptative behavior (functioning) in order to meet Listing 12.05C.

The ALJ acknowledged that plaintiff's I.Q. test scores met Listing 12.05C; the ALJ found that that was the only component of 12.05C which plaintiff met and that plaintiff did not have the requisite "physical or other mental impairment imposing additional and significant work-related limitations of function" to qualify for Listing 12.05C. Specifically, the ALJ stated, as follows:

4

> . . . Reviewing his work history, the file reveals that the claimant was fully and gainfully employed continuously from 1996 through the alleged onset date with yearly wages ranging from $17,327 to $30,261. Testimony from the vocational expert at the hearing revealed the claimant's work over the past several years was semi-skilled in nature. In his testimony, the claimant described his three most recent jobs. He did material handling and forklift driving for a wire company. While much of the handling was determined to be unskilled by the vocational expert, the undersigned notes that the claimant provided a very detailed description of the procedures used to process different types of wire at varying points in the plant, not just the duties of his own limited position. The claimant testified that as a cement truck driver, he was responsible for driving to work sites; coordinating with on-site construction crews; and operating the cement truck delivery to meet the contractors' needs. As a handler and driver for a food service company, the claimant described a position that required him to load his truck based on the order sheet provided; drive throughout a multi-county area in central and southeastern Kentucky; make deliveries to stores and other customers; provide documentation to customers if credits to there accounts were needed due to an error in the product or amount delivered; and even make change for high dollar cash purchases in some areas of southeastern Kentucky.
>
> In reviewing the claimant's pre-hearing material at Ex. E-1 through E-8, the undersigned found these to be completed with significant clarity and detail. However, the handwriting did not appear to be the claimant's. At the hearing, the claimant was asked who completed his forms. He testified his wife had completed them because his handwriting was not the best. When asked by the undersigned what was the basis of her information, he testified that he told his wife what to include. When asked by his representative whether he told his wife the general topics or gave her specific words, the claimant testified that his wife completed the forms using the exact words he gave her.
>
> While the claimant's scores are consistent with Listing 12.05C, his significant work history; his detailed pre-hearing submissions; and his extremely clear and well-spoken testimony throughout the hearing lead to a conclusion that he has essentially no deficits in adaptive functioning. Psychological assessments have concluded he is of Borderline Intellectual Functioning. The undersigned has given the benefit of the doubt to the claimant and accepted that assessment, but notes that, in general, the claimant appears continually to have functioned above even the Borderline level.

Tr. 21.

The ALJ's finding that while plaintiff has low I.Q. test scores, plaintiff does not have deficient adaptive functioning, is supported by the evidence of record. For instance, in April 2004, plaintiff was evaluated by Dr. Robert Fitz regarding his mental impairments (Tr. 230-238). Dr. Fitz reported that plaintiff had a performance IQ of 79, verbal IQ of 67, and full-scale IQ of 70, which placed him within the range of mild mental retardation - borderline mental retardation. (Tr. 234). Dr. Fitz diagnosed plaintiff with borderline intellectual functioning, *not mental retardation*. (Tr. 325).

5

Additionally, medical expert Dr. Suzann O'Koon testified that "even according to the DSM-4, one can have scores of 70 or below, but if your adaptive functioning is sufficient, a diagnosis of mild mental retardation would not be given, borderline intellectual functioning would." (Tr. 320). Upon her review of the medical evidence of record, Dr. O'Koon opined that plaintiff did not meet or equal Listing 12.05C because he was **not** at deficit level in adaptive functioning. *Id.* Dr. O'Koon noted that plaintiff's adaptive functioning indicates that he is able to function **above** the mild mental retardation level. *Id.*

A medical expert's opinion may constitute substantial evidence when it is supported by the other medical evidence in the record. *See Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1083 (6th Cir. 1987). In this case, Dr. O'Koon's opinion rendered in August of 2004, is consistent with the opinion of Dr. Fitz, who evaluated plaintiff in April of 2004. For all of the foregoing reasons, the Magistrate Judge is unpersuaded by plaintiff's argument and concludes that the ALJ's finding that plaintiff's mental condition does not meet or equal Listing 12.05C is supported by substantial evidence.

**B.     ALJ's finding that plaintiff has a limited education**

Plaintiff also charges that the ALJ erred in finding that plaintiff has a limited education, when he should have found plaintiff to be illiterate.

For purposes of evaluating education as a vocational factor, "limited education" means ability in reasoning, arithmetic, and language skills, but not enough ability to allow a person with these education qualities to do most of the more complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. § 404.1565(b)(3). Generally, seventh grade through eleventh grade level of formal education is considered limited education. *Id.* Illiteracy is defined as the inability to read or write. 20 C.F.R. § 404.1565(b)(1). A claimant is considered "illiterate" if he cannot read or write a simple message such as instructions or inventory lists even though he can sign his name. *Id.*

The report of Dr. Robert Fitz of his psychological evaluation of plaintiff in April of 2004, reflects that plaintiff can read[1] and write, although he complains of having poor penmanship. (Tr. 234). Dr. Fitz summarized his evaluation of plaintiff, as follows:

> SUMMARY: This is a 35-year-old married male whose chief complaint is low back pain. He has psychological limitations of borderline intellectual functioning and limited literacy.
>
> His ability to understand, retain and follow directions is good for simple directions, poor for complex directions, to sustain attention to perform simple repetitive tasks fair because of pain, to relate to others including fellow workers and supervisors good, to tolerate the stress and work pressures of day-to-day work activity is poor because of pain.

Tr. 236.

Given the definition of "illiteracy" found in 20 C.F.R. § 404.1565(b)(1), and the evidence of record that plaintiff can read and write, a finding of "illiterate" is not warranted. Plaintiff may have "limited literacy," as noted by Dr. Fitz, which is akin to a limited education; however, plaintiff is not illiterate. Thus, the ALJ's finding that plaintiff has a limited education is supported by substantial evidence.

### C.  ALJ's finding that VE's testimony was consistent with DOT job descriptions

The ALJ found that the VE's testimony was consistent with job descriptions in the DOT. (Tr. 24). Plaintiff alleges that irrespective of such finding, the ALJ erred by failing to comply with SSR 00-4p (2000), for not asking the Vocational Expert (VE) if the jobs that the VE identified that plaintiff could perform were consistently classified in the DOT, and if not, to resolve any discrepancy between the two. In support of this argument, plaintiff notes that the machine operator jobs identified in the DOT are medium level jobs, with an SVP above 2, and that under SSR 00-4p, only jobs with SVP levels of 1 or 2 are unskilled; therefore, given plaintiff's RFC, it appears that the machine operator jobs listed in the DOT exceed plaintiff's ability, and the ALJ failed to obtain VE testimony to resolve this discrepancy. Plaintiff also asserts that the assembler job has a SVP level

---

[1] "He doesn't read a lot. He said he will read a newspaper or a magazine occasionally." (Tr. 234).

7

of 2, but the reading and language level of this job exceeds plaintiff's literacy level; therefore, plaintiff contends that the ALJ also failed to resolve this conflict with SSR 00-4p.

A closer examination of the machine operator jobs listed in the DOT reflects that DOT 649-665-010 shows the job of a sorting machine operator to be light and unskilled. Thus, while there are more strenuous machine operator jobs listed in the DOT, the sorting machine operator job is within plaintiff's RFC. Concerning the assembler jobs, which plaintiff asserts exceed his educational level in that he is "illiterate," as previously noted above, the ALJ properly found that plaintiff is not illiterate and has a limited education. Therefore, plaintiff's educational level, as found by the ALJ, would permit him to perform the assembler jobs.

Although the ALJ should have elicited additional testimony from the VE to provide a better explanation of the DOT job classifications and codes to make perfectly clear that plaintiff has the RFC and educational level to perform the jobs identified by the VE, there appears to be no conflict and/or discrepancy between the VE testimony and the DOT. Thus, the ALJ's error in this regard is no more than harmless error that does not warrant a remand of this action for further proceedings.

The harmless error rule is applicable where the "mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of the decision reached." *U.S. Steel Corp. v. U.S. Environmental Protection Agency*, 595 F.2d 207, 215 (5th Cir. 1979) (quoting *Braniff Airways, Inc. v. C.A.B.*, 379 F.2d 453, 466 (D.C. Cir. 1967)). The test is whether these administrative imperfections are harmful. As noted in *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." The *Mays* court also indicated that "[t]he major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Id.*

In *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535 (6th Cir. 2001), the Sixth Circuit declined to remand a case where an ALJ's error or omission amounted to nothing more than harmless error. *See also, Ward v. Commissioner of Social Security*, 211 F.3d 652 (1st Cir. 2000),

wherein the court held that although an error of law by the ALJ in considering a social security claim may necessitate a remand, "a remand is not essential if it will amount to no more than an empty exercise." *Ward*, 211 F.3d at 654. As the Second Circuit held in *Schaal v. Apfel*, 134 F.3d 496, 504 (2nd Cir. 1998), "where application of the correct legal standard could lead to only one conclusion, we need not remand." Thus, technical error alone does not require remand or reversal where the ALJ's findings are consistent with the expert's opinion. *See, Seymore v. Apfel*, 131 F.3d 152 (10th Cir. 1997) (noting that it would have been preferable for the ALJ to discuss the consultant's opinion but reversal was not required where the ALJ stated he had considered all the evidence, and the consultant's opinion was for the most part consistent with the ALJ's decision); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (finding that no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result).

In this case, the Magistrate Judge concludes that remand of this action for further proceedings would not lead to a different result.

## V. CONCLUSION

Having reviewed the administrative record, including the medical evidence, the cross-motions for summary judgment, and the applicable law concerning judicial review of the Commissioner's decision, the Magistrate Judge concludes that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence.

Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's motion for summary judgment [DE #5] be **DENIED**, that the defendant's motion for summary judgment [DE #8] be **GRANTED**, and that this action be **DISMISSED** and **STRICKEN** from the docket.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court

9

of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P. 6(e).

This _4th_ day of October, 2005.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE