UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 04-570-JBC**

**VIRGIL R. MASTERS,**                                                        **PLAINTIFF,**

**V.**               **MEMORANDUM OPINION AND ORDER**

**JO ANNE BARNHART, COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**                        **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \* \*

The plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his application for disability insurance benefits. Upon cross-motions for summary judgment (DE 5, DE 8), the court referred this action to United States Magistrate Judge James B. Todd, who issued the Proposed Findings of Fact and Recommendation (DE 13). The plaintiff has filed objections to the Report and Recommendation (DE 14).

When the parties to an action submit objections to the Magistrate Judge's report, the district court reviews the record *de novo*. 28 U.S.C. § 636 (b)(1)(C).

The court, having reviewed the record in light of the plaintiff's objections and being otherwise sufficiently advised, will decline to adopt the Magistrate Judge's Report and Recommendation and remand this matter to the Commissioner for further administrative proceedings.

**The Plaintiff's Objections to the Report and Recommendation**

The plaintiff objects to the Magistrate Judge's Report on three grounds: (1) that the Magistrate Judge erred in finding that the Administrative Law Judge's ("ALJ") decision that the plaintiff did not meet the requirements of the impairment in Listing

12.05C was supported by substantial evidence; (2) that he erred in affirming the ALJ's determination that the plaintiff is not illiterate and has limited education; and (3) that he erred in accepting the ALJ's assessment of the vocational expert's ("VE") testimony without resolving conflicts with the Dictionary of Occupational Titles ("DOT") as required by Social Security Ruling ("SSR") 00-4p.  Review of the ALJ's decision to deny disability benefits is limited to determining whether substantial evidence exists to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y Heath & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989), *citing Richardson v. Perales*, 402 U.S. 389 (1971).  "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

    1.    **Listing Number 12.05C**

The plaintiff contends that the ALJ's finding that he did not meet the requirements of listed impairment number 12.05C is not supported by substantial evidence.  Listing 12.05C defines "mental retardation" as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  The level of severity can be satisfied by "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.* at 12.05C.

The parties agree that the plaintiff satisfies the IQ requirement, and there does not appear to be any argument over the effect that his physical impairments have on his ability to work.  The plaintiff disagrees, however, with the ALJ's conclusion that he does not suffer from any adaptive functioning deficit.  To meet the standard for mental retardation, a plaintiff's impairment must satisfy both the introductory paragraph and one of the four sets of criteria provided in 12.05.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00A.  Adaptive functioning describes "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."  DSM-IV-R, 42.  Mental retardation is typified by "significant limitations in adaptative functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety."  DSM-IV-R, 41.  The plaintiff argues that he meets the requirement by virtue of his limited academic and social-interpersonal skills.

The plaintiff in this case previously worked as a material handler and forklift driver, a cement truck driver, and a handler and driver for a food service company.  The VE classified his recent work as semi-skilled.  AR 324-25.  Based on his residual functional capacity ("RFC"), the ALJ determined that the plaintiff could perform a significant range of light work.  AR 23.  The ALJ conceded that the plaintiff's back impairment was severe.  AR 21.  Although the ALJ assessed the plaintiff as having borderline intellectual functioning, considering the plaintiff's work history and the clarity of his testimony at the hearing, the ALJ found he did not satisfy Listing 12.05C because

he "appears continually to have functioned above even the Borderline level" and "has essentially no deficits in adaptive functioning." AR 21.

The Sixth Circuit reversed a finding of non-disability under Listing 12.05C in *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985). The ALJ in *Mowery* found that the plaintiff did not have a severe mental impairment, because although his IQ was in the 60-70 range, he had consistently been able to function at his level of retardation and could therefore perform his past work. *Id.* at 969. The district court affirmed that decision. *Id.* at 968. The court of appeals explained that an IQ score between 60 and 70 is a *per se* disability if it is coupled with any additional significant limitations. *Id.* at 971. In light of multiple physical problems that limited the plaintiff to performing light or sedentary work, the court concluded that he had "additional and significant work related limitations of function" as required under 12.05C. *Id.* at 973. The fact that the claimant had worked and functioned with the mental impairment did not render that impairment non-severe, because the additional physical limitations prevented him from performing the former work. *Id.* at 971. Ultimately, *Mowery* establishes that past ability to function does not preclude a finding of mental retardation under Listing 12.05C. *Mowery* does not stand for the proposition that a claimant may be found disabled under Listing 12.05C without a finding that he has deficient adaptive functioning.

The ALJ in this case did not base his determination solely on the plaintiff's ability to function at his previous employment. The ALJ also concluded that the plaintiff did not have deficient adaptive functioning, which finding is supported by substantial evidence on the record. Because satisfaction of the introductory paragraph of Listing

12.05 is required to meet the definition, the absence of an adaptive functioning deficit precludes a claimant from qualifying for disability benefits under that section.

Robert Fitz, Ph.D., performed a consultative examination of the plaintiff on April 26, 2004. Dr. Fitz found that the plaintiff's IQ placed him within the range of mild mental retardation. AR 235. The claimant did not demonstrate functional literacy. *Id.* With regard to the plaintiff's functional capacity, Dr. Fitz observed that the plaintiff can manage money, handles his personal care, drives, can use a telephone phone book and go to the post office, cares for the family pets, plays board or card games with friends, and occasionally reads a newspaper or magazine. AR 234. Although the plaintiff showed some anger, dysphoria, and concern about money, Dr. Fitz considered those feelings to be normal under the circumstances and did not believe they imposed any further limitations on the plaintiff's ability to work. AR 235. Dr. Fitz's prognosis was that the plaintiff had borderline intellectual functioning and limited literacy. AR 236. Dr. Fitz concluded that the plaintiff had good ability to understand, retain, and follow simple directions, poor ability to understand, retain, and follow complex directions, and good ability to relate to others including fellow workers and supervisors. *Id.* Because of his pain, his ability to sustain attention and perform simple, repetitive tasks was only fair, and his ability to tolerate the stress and pressures of daily work was poor. *Id.*

Dr. Suzanne O'Koon, Ph.D., a medical expert, completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on August 4, 2004. She assessed the plaintiff as having good ability to follow work rules, relate to co-workers and supervisors, maintain his personal appearance, behave in an emotionally stable manner, and relate predictably in social situations. AR 268-69. She found that he had fair ability to use

judgment, function independently, and maintain attention and concentration in simple matters.  *Id.*  She evaluated his ability to deal with the public, deal with work stress, and pay attention to and concentrate on complex matters as poor.  *Id.*  Dr. O'Koon classified her evaluation under Listing 12.02, Organic Mental Disorders, based on the plaintiff's borderline intellectual functioning.  AR 270.  Dr. O'Koon determined that the plaintiff had only mild limitations in performing daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace for simple tasks.  AR 280.  She also concluded that there was insufficient evidence to support a finding of mental retardation under Listing 12.05, because his adaptive functioning was not at a deficit level.  AR 274, AR 320.

     Even assuming that the plaintiff's functional academic skills are inadequate, there is nonetheless substantial evidence on the record to support the ALJ's determination that he does not have the requisite deficits in adaptive functioning to satisfy listing 12.05, because the evidence shows his functioning in the remaining ten areas is sufficient.  The plaintiff posits that his social/interpersonal skills are deficient, citing Dr. O'Koon's determination that he has poor ability to deal with the public.  However, Dr. O'Koon also found that he was only mildly limited in functioning, and he had good ability to react predictably in social situations and behave in an emotionally predictable manner.  A medical expert's opinion, uncontradicted by the evidence on record, may constitute substantial evidence alone.  *See Hale v. Sec'y Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987).  Additionally, Dr. Fitz found the plaintiff capable of interacting well with others and noted the fact that he and his wife played

6

games with their friends.  Nothing on the record contradicts these findings as to the plaintiff's interpersonal functioning, and the evidence therefore provides substantial support for the ALJ's finding that the plaintiff does not meet the criteria of Listing 12.05C.

### 2. Illiteracy vs. Limited Education

The plaintiff also takes issue with the finding that he is not illiterate.  Illiteracy is "the inability to read or write," other than to sign one's name.  20 C.F.R. § 404.1564(b)(1).  A person is not illiterate if he can "read or write a simple message such as instructions or inventory lists."  *Id.*  The ALJ found that the plaintiff has limited education, defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."  20 C.F.R. § 404.1564(b)(3).  Limited education is generally consistent with skills on a seventh- through eleventh-grade level.  *Id.*

Although the plaintiff completed the tenth grade in special education, the results of a Wide Range Achievement Test ("WRAT") demonstrate that he reads on a fourth-grade level and can perform arithmetic on a sixth-grade level.  AR 235.  Considering his WRAT scores and the evidence that he can and does read newspapers and magazines, the evidence confirms the ALJ's conclusion that the plaintiff is not illiterate.  However, schooling at or below a sixth-grade level is generally considered marginal education, which contemplates "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."  20 C.F.R. § 404.1564(b)(2).  In

light of the plaintiff's WRAT and the fact that his tenth-grade education was obtained in a special education setting, a classification of limited education is not supported by the record. The plaintiff is properly categorized as having a marginal education.

The improper limited, as opposed to marginal, educational classification is not grounds alone for reversal or remand. The impact of the distinction depends on the effect that the error had on the ultimate determination that there exist substantial jobs in the economy that the plaintiff can perform.

### 3. Conflicts between VE Testimony and DOT

Specific vocational preparation ("SVP") refers to the amount of time required to develop the ability to perform a given occupation. By virtue of his marginal education, the plaintiff is limited to jobs classified as unskilled, which have an SVP of 1 or 2. SSR 00-4p; 20 C.F.R. § 404.1568(a). "[T]he regulatory definitions of skill levels are controlling." SSR 00-4p.

The ALJ determined that the plaintiff could perform a significant range of light work. AR 23. The ALJ agreed with the VE's assessment that the plaintiff could perform approximately 40% of the light assembler jobs, sedentary assembler jobs, and sedentary machine operator jobs. AR 24, 330-33. When the ALJ asked the VE for an example of a sedentary assembler job, the VE referred to electronic components, which has an SVP of 3. The VE's and ALJ's apparent impression that the plaintiff could perform jobs with an SVP of 3 is inconsistent with his skill level based on his education. The court does not reach the question whether a conflict exists between the VE's testimony and the DOT. Rather, because the VE's and ALJ's assessment of

available jobs was based on an inaccurate educational classification, remand is necessary to reevaluate the plaintiff's disability status. Accordingly,

**IT IS ORDERED** that the court **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation (DE 13) at this time.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 5) is **DENIED WITHOUT PREJUDICE** and the Commissioner's motion for summary judgment (DE 8) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** for further proceedings consistent with this order.

Signed on March 29, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY